IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

ESTEVERNICO A. MITCHELL, #207 110       *

    Plaintiff,                              *

       v.                                   *       2:03-CV-1241-WHA
                                                     (WO)

GWENDOLYN MOSLEY, *et al.*,              *

    Defendants.                             *

_____

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Plaintiff, Estevernico Mitchell ["Mitchell"], a prison inmate, claims that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Mitchell seeks injunctive relief and $100,000.00 in damages from each defendant.

In response to the orders of the court, Defendants filed special reports and supporting evidentiary material in response to the allegations contained in the complaint. The court then informed Mitchell that Defendants' special reports may, at any time, be treated as motions for summary judgment, and the court explained to Mitchell the proper manner in which to respond to a motion for summary judgment. Mitchell filed responses to the special reports filed by Defendants Gwendolyn Mosley, Dr. Gene Darbouze, and Nurse Kay Wilson.[1] This

___

[1] Despite being granted the opportunity to do so (*see* Doc. No. 48), Mitchell did not file an opposition to Defendant DeLong's written report.

case is now before the court for consideration of Defendants' motions for summary judgment, which the court concludes are due to be granted.

## I. FACTS AND ALLEGATIONS

Mitchell filed this complaint while incarcerated at the Easterling Correctional Facility.[2] Defendants are Warden Gwendolyn Mosley ("Mosley"), Dr. Jean Darbouze ("Dr. Darbouze"), Nurse Kay Wilson ("Wilson"), and Dr. James DeLong ("Dr. DeLong").

Mitchell states that he entered the custody of the Alabama Department of Corrections in April 2002 and arrived at Easterling Correctional Facility ("Easterling") on April 24, 2002.[3] Mitchell contends that Dr. Darbouze examined him upon his arrival at Easterling and changed all of his medications. The change in medication caused Mitchell to experience various side effects including vomiting, hallucinations, blood in urine, nervousness, dizziness, and fainting spells. (Doc. No. 1 at pgs. 5-6.)

In October 2002 Mitchell was sent to Mobile, Alabama, for a court hearing. He continued to suffer from side effects as noted above and on November 14, 2002, while still in Mobile, he suffered a heart attack and underwent a heart catheterization at a local hospital. (Doc. No. 1 at pg. 6.)

In January 2003 Mitchell asserts that he experienced more "heart attack problems" due to a sudden medication change prescribed by Dr. Darbouze. He asked Nurse Wilson if

---

[2]Mitchell was transferred to another correctional facility in Alabama during the pendency of this action.

[3]The documents and records before the court reflect that Mitchell actually arrived at Easterling on or about June 18, 2002. (*See* Doc. No. 47, Exh. A.)

she could contact her boss at Prison HealthCare, Inc., but Nurse Wilson informed Mitchell that her bosses had already reviewed his case. Mitchell maintains that Dr. Darbouze denied his request for examination by a cardiologist. Mitchell also complains that he was denied a "proper diet." (Doc. No. 1 at pgs. 6-7.)

As relief, Mitchell requests that he be seen by a cardiologist and that he receive a proper diet. He also requests damages in the amount of $100,000.00 from each defendant.

## II. STANDARD OF REVIEW

Under FED.R.CIV.P 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[4] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.*

---

[4]In *Celotex Corp.*, 477 U.S. 317, the court stated:

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue...Rule 56(e)...requires the nonmoving party to go beyond the pleadings and by...affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'...We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment...Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c) except the mere pleadings themselves. . ."

*Id*. at 324.

at 323.  The movant may meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324. If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, that a genuine issue material to the non-movant's case exists.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991);  *see also* FED.CIV.P.  56(e).  ("When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of [his] pleading, but [his] response ... must set forth specific facts showing that there is a genuine issue for trial.").

What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).  A dispute of material fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*. at 248 (1986).  The non-movant  "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, the non-movant must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment.  *Anderson*, 477 U.S. at 257.  If  the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant.  *See Holifield v. Reno*, 115 F.3d 1555, 1564 n. 6 (11th  Cir. 1997); *Harris v. Ostrout*, 65 F.3d 912 (11th  Cir. 1995).  However, if there is a conflict in the evidence, the plaintiff's

evidence is to be believed and all reasonable inferences must be drawn in his favor. *Anderson*, 477 U.S. at 255; *Molina v. Merritt & Furman Ins. Agency*, 207 F.3d 1351, 1356 (11th Cir. 2000). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c).

### III.  DISCUSSION

*A.  The Claims for Injunctive Relief*

During the pendency of this action, Mitchell was transferred to another correctional facility. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See  County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). As it is clear from the pleadings and records before the court that Mitchell is no longer incarcerated at Easterling his requests for injunctive relief have been rendered moot.

*B.  The Medical Claims*

As an inmate sentenced to confinement, Mitchell is entitled to receive treatment for his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Failure to provide treatment, when indicating a "deliberate indifference to serious medical needs of prisoners," results in "the 'unnecessary and wanton infliction of pain,'...proscribed by the

Eighth Amendment." *Id.* at 104; *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985). An inadvertent failure to provide adequate medical care, however, cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." *Estelle*, 429 U.S. at 105-06 (footnote omitted). To state a valid claim of medical mistreatment under the Eighth Amendment, a prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106. Deliberate indifference is shown by establishing that the defendant had actual knowledge or awareness of an obvious risk to a plaintiff's serious medical need and failed to take steps to abate that risk. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

In *Farmer*, the Court noted that "deliberate indifference l[ies] somewhere between the poles of negligence at one end and purpose or knowledge at the other . . ." *Id*. 511 U.S. at 836. A claim for inadequate medical care under the Eighth Amendment will not succeed unless the treatment rendered was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). Deliberate indifference may be demonstrated by either actual intent or reckless disregard. *Id.* Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837. Thus, a health

care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). Under this standard, a prison or medical official does not act with indifference by providing medical care that is different from that which a prison inmate desires. *See Hamm v. De Kalb County*, 774 F.2d 1567 (11th Cir. 1985). Further, a showing of negligence, neglect, or medical malpractice is insufficient to establish a constitutional violation. *Rogers*, 792 F.2d at 1058; *see also Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979).

   *i. Warden Mosley*

Mitchell states that he wrote to Warden Mosley in regard to his serious medical needs. Mitchell complains that she responded by advising him to go to the infirmary. In response to Mitchell's allegation of inadequate medical care, Defendant Mosley asserts her official and qualified immunity. The first question for the court, however, is whether Mitchell has asserted a constitutional violation against Defendant Mosley (or any of the named defendants) at all.[5]

Defendant Mosley states that upon Mitchell's arrival at Easterling on June 18, 2002 until his transfer from Easterling on February 9, 2004, he was under the constant care of the prison medical contractors and was enrolled in Easterling's Chronic Care Program where he was closely and consistently monitored and treated for his numerous physical ailments.

---

[5] "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitution right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).

7

Defendant Mosley affirms that she received no information from medical personnel which indicated that Mitchell was denied proper medical care or a proper diet. (Doc. No. 23, Exh. 1.)

Mitchell fails to show that Defendant Mosley was personally involved in his medical treatment or that any actions taken by medical personnel were a consequence of any policy established by her. Supervisory personnel cannot be liable under 42 U.S.C. § 1983 for the action of their subordinates under a theory of respondeat superior. *Monell v. Dept. of Soc. Svces.*, 436 U.S. 658, 691 (1978); *Greason v. Kemp*, 891 F.2d 829, 836 (11th Cir. 1990). Liability may be imposed on them, however, if the plaintiff can demonstrate that they either personally participated in the acts comprising the alleged constitutional violation or instigated or adopted a policy that violated the plaintiff's constitutional rights. *See Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1192 (11th Cir. 1994); *Dolihite v. Maughon By and Through Videon,* 74 F.3d 1027, 1054 (11th Cir.1996).

Mitchell has come forward with no evidence sufficient to create a genuine issue of disputed fact as to whether Defendant Mosley violated his constitutional rights. Mitchell has not demonstrated that Defendant Mosley had any involvement in his medical treatment or lack thereof and presents no evidence that Defendant Mosley's actions or inactions caused a constitutional deprivation. Moreover, Mitchell has pointed to no case which establishes that prison officials have a duty to directly supervise medical staff, to set policy for the medical staff or to intervene in treatment decisions where they are not informed by medical personnel that intervention is necessary to prevent a constitutional wrong. *See Vinnedge v.*

*Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against the managing officers of a prison absent allegations that they were personally connected with the denial of treatment).  For these reasons, Defendant Mosley's motion for summary judgment is due to granted.

    *ii. Defendant Kay Wilson*

Defendant Wilson ["Wilson"] is the Health Services Administrator at Easterling.  In his complaint, Mitchell alleges that he asked Wilson to contact her bosses at Prison HealthCare, Inc., regarding the medical treatment he was receiving, whereupon she informed Mitchell her superiors had already reviewed his case.  Nonetheless, Mitchell complains that "nothing happened for me getting medical attention for my very serious medical needs." (Doc. No. 1 at pg. 7.)

Mitchell is entitled to no relief against Nurse Wilson.  His failure to allege or show personal participation on the part of Wilson or any other action by her regarding his treatment is fatal to his claim.  *See Hill*, 40 F.3d at 1192.  Wilson is, therefore, entitled to summary judgment.

    *iii. Defendants DeLong and Darbouze*

Mitchell's primary allegations regarding the medical treatment he received at Easterling concern a failure to receive a proper diet, being subjected to a medication change which caused serious side effects, and the inability to receive a referral for examination by a cardiologist.  Mitchell's medical records demonstrate that while at Easterling he received medical treatment for his heart condition on numerous occasions as well as appropriate

medication and diet.

Mitchell's medical history is significant for hiatal hernia with gastroesophageal reflux disease, hypertension, hypercholesterolemia, kidney stones, coronary artery disease, and various psychiatric disorders. As noted, Mitchell was enrolled in Easterling's Chronic Care Clinic where he received regular examinations and evaluations. He was also registered in the Mental Health Clinic where he received treatment for his psychiatric disorders. (Doc. No. 47, Exhs. A, C, D.)

With regard to Mitchell's cardiac condition, his medical history reflects that prior to his incarceration at Easterling he had cardiac catheterization surgery which showed mild coronary atherosclerotic disease and widely patent stents.[6] While incarcerated at Easterling, Mitchell made frequent complaints of chest pain which Dr. Darbouze states commonly occurs in patients with coronary artery disease. When Mitchell made such complaints, he received evaluation and treatment. In March 2003 Mitchell underwent a stress echocardiogram which was negative. He also received repeated electrocardiograms which never revealed an acute cardiac condition. In Dr. Darbouze's medical judgment, the medication prescribed for Mitchell did not cause hallucinations or the other side effects about which he complained. Dr. Darbouze further affirms that Mitchell was on an appropriate diet

---

[6]Mitchell's medical records reflect that he has a strong family history of atherosclerosis and that in January 2000 (at approximately 36-37 years of age) he underwent a heart catheterization at the Mobile Medical Infirmary Center after presenting with "non-Q-wave myocardial infarction following cocaine abuse." (Doc. No. 47, Exh. A.)

for a person with his medical conditions.[7] Dr. Darbouze further states that in his medical opinion, Mitchell's repeated requests for a referral to a cardiologist for further cardiac consultation were neither necessary nor indicated. (Doc. No. 44, Exh. A, Doc. No. 47, Exhs. A, C, D.)

Defendants Darbouze and Wilson submitted the affidavit of Dr. Tahir Siddiq, Medical Director for Bullock Correctional Facility where Mitchell is currently confined, in support of their dispositive motion. Dr. Siddiq states that based on his evaluation of Mitchell and his medical records, Mitchell's medical condition has remained stable and he has been receiving appropriate treatment for his condition, including appropriate medication. Dr. Siddiq states that, in an effort to appease Mitchell's concerns over his cardiac condition, he arranged for Mitchell to be evaluated by a free world cardiologist, Dr. Luqman Ahmed. This consultation occurred on April 7, 2004. Dr. Ahmed opined that Mitchell's complaints of continued chest pain were likely from his coronary artery disease, but that he has been on an appropriate treatment regimen for this condition. Although Dr. Ahmed made one minor change to Mitchell's medications, he recommended continuation of the remainder of Mitchell's current prescription regimen. (Doc. No. 47, Exhs. A, E, Doc. No. 60, Exh. A.)

In his opposition, Mitchell asserts that Dr. Ahmed told him that Defendants were improperly mixing medication and had him on the wrong medication and too much beta blocker. (Doc. No. 58, Exh. B.) Apart from Mitchell's self-serving, conclusory assertions,

---

[7]Mitchell's medical records reflect that while at Easterling he was on a "no added salt"/diabetic diet." (Doc. No. 47, Exh. A.) Apart from his conclusory contention that he was not on a "proper" diet, Mitchell fails to allege how his diet profile was improper or harmful to his health.

there is no evidence tending to show that the prescription regimen he was on at Easterling was medically contraindicated or deleterious to his health. *See Larken v. Perkins,* 22 Fed. Appx. 114, *1 (4th Cir. October 29, 2001) (noting that the district court properly found a party's "own, self-serving affidavit[s] containing conclusory assertions and unsubstantiated speculation" insufficient to stave off summary judgment). Moreover, even taking Mitchell's contentions as true, his assertions do not call into question the undisputed facts which reflect that medical personnel at Easterling continuously provided treatment and care for his various medical conditions based on their professional expertise and judgment. *See Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3rd Cir.1990) ("While the distinction between deliberate indifference and malpractice can be subtle, it is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.").

In regard to Mitchell's allegation that Dr. DeLong and Dr. Darbouze failed to provide him with adequate medical care, the court finds that a claim of deliberate indifference to serious medical needs requires a greater showing than has been made here. *Estelle*, 429 U.S. at 106. The court has carefully reviewed Mitchell's substantial medical records and concludes that he has not established that his treating physicians deliberately disregarded his complaints stemming from his cardiac condition. Mitchell is correct that he did not receive a referral for a cardiologist consultation while at Easterling, but that fact alone does not establish deliberate indifference. The decision whether a certain diagnostic technique or form of treatment should be prescribed "is a classic example of a matter for medical judgment."

12

*Estelle*, 429 U.S. at 107.

The facts of this case reflect that Mitchell received routine, timely, and appropriate medical treatment and medication for his cardiac condition. He has no constitutional right to specific medical treatment on demand simply because he thinks he needs a certain procedure, nor does he have a constitutional right to be treated by a specific doctor, nurse, or other medical personnel. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) ("Society does not expect that prisoners will have unqualified access to health care."). Further, to the extent Mitchell's claim is based upon his own disagreement with the prison medical staff about his medical treatment, such a claim does not amount to deliberate indifference. *Estelle*, 429 U.S. at 107; *Hamm* , 774 F.2d. At 1575. Additionally, any claim that specific medical procedures have been impermissibly delayed requires an inmate to put verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment. *Hill*, 40 F.3d at 1188. Here, the court finds that no verifying evidence has been produced which establishes any detrimental effect of delay in referring Mitchell to a cardiologist while he was at Easterling.

Based on the foregoing, the court finds that Mitchell has failed to establish that his constitutional rights were violated by Drs. DeLong and Darbouze. Assuming, *arguendo*, that Mitchell's condition constitutes a serious medical need, he has not presented evidence of Drs. DeLong or Darbouze's deliberate indifference. Nor has Mitchell shown that their treatment decisions reflected a substantial departure from accepted professional judgment, practice, or standards which tends to show that they did not make decisions based on such judgments. *See Youngberg v. Romeo*, 457 U.S. 307, 323 (1982). While Drs. DeLong and Darbouze

and/or other members of the medical staff at the Easterling Correctional Facility may not have responded to Plaintiff's complaints in the manner he desired, their responses to his requests for care and treatment do not demonstrate the requisite a culpable state of mind.  As noted, a difference of opinion between an inmate and health care personnel regarding the expediency of a specific treatment, does not generally create a constitutional claim, and does not do so in the instant case.  *Hamm*, 774 F.2d at 1575.  Mitchell is, therefore, unable to meet the standards set forth to make out a claim of deliberate indifference to his serious medical needs, and Drs. DeLong and Darbouze's dispositive motions are due to be granted.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The motions for summary judgment filed by Defendants (Doc. Nos. 23, 44, 47) be GRANTED;

2.  Judgment be ENTERED in favor of Defendants and against Plaintiff;

3.  This case be DISMISSED with prejudice; and

4.  The costs of this proceeding be TAXED against Plaintiff

It is further

ORDERED that the parties are DIRECTED to file any objections to the Recommendation on or before May 15, 2006.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is  objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The

parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 2nd day of May, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE